UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| JOHN BRAATEN, AN INDIVIDUAL,<br><br>    Plaintiff,<br><br>    v.<br><br>NEWMONT USA LIMITED, A FOREIGN CORPORATION,<br><br>    Defendant. | 3:15-cv-00174-LRH-WGC<br><br>ORDER |

This case involves a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"). Before the court is defendant Newmont USA Limited's Motion for Summary Judgment. ECF No. 43. Plaintiff John Braaten filed a response (ECF No. 45), to which Newmont replied (ECF No. 48). The court will grant Newmont's motion because (1) Braaten has failed to establish a *prima facie* case of age discrimination and (2) even if he had met this initial burden, Braaten's failure to report his criminal charges to Newmont, among other factors, created a legitimate, nondiscriminatory reason for his termination that was not pretextual.

**I.      Background**

Before his termination, Braaten was employed for over twenty-four years with Newmont, a mining company with operations in Nevada. Newmont promoted Braaten several times throughout his career, including his first supervisory foreman position in 1994. ECF No. 43 at 9. At the time of his termination, Braaten held the title of Underground Fixed Maintenance General Foreman and was fifty-four years old. *Id*. at 10.

Newmont's employee code of conduct requires its employees to report to the company all legal charges they incur. *Id*. at 7. Specifically, the "Standards of Conduct and Corrective Action"

provide that "[i]n the event you are charged with or convicted of a crime you must report that fact to your department and to your human resources representative within five (5) days of being charged or convicted." *Id*. (quoting ECF No. 43-1 at 9). It is undisputed that Braaten was aware of these policies, as he signed forms throughout his employment acknowledging Newmont's policies and participated in the company's "Annual Refresher Training" sessions in 2013 and 2014, which covered the reporting policy. *Id*. at 8–9. Additionally, Braaten received first-hand experience with the policy in 2012, when two separate employees that Braaten supervised, Shaun Forsberg and Lupe Macias, contacted him to report their DUI arrests. *Id*. at 9–10.

Nonetheless, it is undisputed that Braaten failed to report his own DUI charges to anyone at Newmont. On April 3, 2014, Braaten left work early[1] at approximately 1:30 p.m. and proceeded to a nearby casino in Spring Creek, Nevada, where he consumed alcohol. *Id*. at 11. At approximately 8:00 p.m. that same day, Braaten crashed his car into the front lawn of a residence in Spring Creek. *Id*. at 12. He was taken to a local hospital, and a blood draw later revealed that Braaten's blood alcohol content was 0.168. *Id*. It does not appear that Braaten was arrested at this time.

Two days later, Braaten contacted his supervisor, Mine Maintenance Superintendent Bill Burt, to inform him of the accident and resulting absence from work. Even after Burt directly asked Braaten if he had anything to report, Braaten did not disclose that the accident was alcohol related. *Id*. at 14 (citing ECF No. 43-2 at 24). Rather, Braaten stated that he did not want to discuss anything related to the accident. *Id*.

Tauna Staples, a Newmont HR specialist, later contacted Newmont to explain his short-term-disability benefits. *Id*. Braaten once again did not disclose that alcohol caused his accident. Instead, he informed Staples that he wanted to use his paid time off ("PTO") instead of short-term disability. *Id*. When Staples asked Braaten why he would want to use PTO when he had this benefit available to him, he simply affirmed that he wanted to use his PTO. *Id*. Nonetheless,

---

[1] Newmont explains that Braaten did not have a set schedule, but he was covering for his own supervisor, Mine Maintenance Superintendent Bill Burt, that day and was therefore acting superintendent. ECF No. 43 at 11.

several weeks later, Braaten submitted a claim form to Newmont for short-term disability but did not report that the accident was alcohol related. *Id*. at 15. Newmont's disability benefits, however, do not cover injuries stemming from unlawful alcohol use or criminal acts. *Id*. (citing ECF No. 43-1 at 34). During his employment, Braaten acknowledged receipt of the benefits policies (ECF No. 43-1 at 47) and has not argued that he was unaware of the policy exclusions[2] (*see generally* ECF No. 45). Newmont approved Braaten's disability claim and provided him a total of approximately $10,000 in benefits. ECF No. 43 at 18.

On June 2, 2014, the State of Nevada filed a criminal complaint against Braaten for driving under the influence and willful injury to or destruction of property. *Id*. at 16. Warrants were issued for his arrest, which Braaten learned of on June 9 and subsequently surrendered himself. *Id*. At no point did Braaten report these charges[3] to Newmont. *Id*. at 17.

On June 10, 2014, a local newspaper reported that Braaten had been arrested. *Id*. Shortly thereafter, Newmont learned of his arrest from the report. *Id*. On June 26, Burt and other Newmont officials met with Braaten regarding his charges. *Id*. When asked whether he was aware of the policy requiring him to report criminal charges within five days, Braaten replied "sure I did." *Id*. (citing ECF No. 43-1 at 35–39). Braaten also acknowledged that he had been reminded of the policy at the recent Annual Refresher Training. *Id*. at 18.

A management team eventually concluded that Newmont should terminate Braaten. *Id*. Newmont has asserted that this decision did not consider Braaten's age but rather the fact that he violated company policy by not reporting the DUI charges and made a short-term-disability claim even though he was ineligible for these benefits. *Id*. On July 7, the management team met

---

[2] Rather, Braaten has argued that Braaten "drove" him to file for short-term disability by informing him he needed to file for the benefit after he stated that he planned to use his PTO. ECF No. 45 at 8.

[3] In his complaint, Braaten asserts that he was not *read* charges until August 5, 2014 (ECF No. 17 at 2), implying that he was not obligated to report his charges to Newmont until after this date. However, as Newmont correctly argues in its motion, the State filed a criminal complaint on June 2, which constituted charges against Braaten. ECF No. 32 at 16; *see also* Nev. Rev. Stat. § 171.102 (defining a criminal complaint as "a written statement of the essential facts constituting the public offense charged."). Braaten does not address this point in his response.

1  with Braaten to inform him of its termination decision and the basis of that decision. *Id*. at 19.
2  During the meeting, Braaten did not claim he was being discriminated against due to his age.
3  Two weeks later, Braaten met with Jack Henris, the General Manager of Operations, in order to
4  appeal his termination. *Id*. At the conclusion of the meeting, Henris decided to uphold the
5  termination. *Id*. Once again, Braaten did not mention age discrimination. *Id*.

6  Braaten's replacement after his termination was Todd Sullivan, who at the time was
7  forty-four-and-a-half years old. ECF No. 43 at 20.

8  In March of 2015, Braaten filed suit in this court, alleging a single count of age-related
9  discrimination.

10  **II.  Legal standard**

11  Summary judgment is appropriate only when "the pleadings, depositions, answers to
12  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
13  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
14  of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence,
15  together with all inferences that can reasonably be drawn therefrom, must be read in the light
16  most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*
17  *Corp.*, 475 U.S. 574, 587 (1986); *Cty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154
18  (9th Cir. 2001).

19  The moving party bears the burden of informing the court of the basis for its motion,
20  along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v.*
21  *Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the
22  moving party must make a showing that is "sufficient for the court to hold that no reasonable
23  trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d
24  254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D.
25  Cal. 2001).

26  To successfully rebut a motion for summary judgment, the non-moving party must point
27  to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v.*
28  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might

4

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id*. at 252.

**III.    Discussion**

The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If successful, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. *Id*. And if the defendant provides such a justification, the burden shifts back to the plaintiff to show that the defendant's justification is a mere pretext for discrimination. *Id*. at 804.

As discussed below, the court finds that Braaten has failed to meet his initial burden of establishing a *prima facie* case of discrimination. While this alone would end the inquiry, the court will address, for the sake of thoroughness, why Newmont's rationale for terminating Braaten is a legitimate, non-discriminatory reason that Braaten has failed to demonstrate is pretextual.

**A.    *Prima facie* case**

To prove a *prima facie* case of age discrimination, a plaintiff must show that "he was (1) (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)).

5

It is undisputed that Newmont terminated Braaten and that he was at least forty years old at the time. The court will therefore only address the remaining elements.

### 1. Braaten was performing his job satisfactorily

Newmont argues that the court should consider Braaten's work performance up until the time of his termination and should therefore consider his terminating event—i.e., the DUI-related conduct. ECF No. 43 at 23. Newmont thus argues that, despite over two decades of positive performance evaluations, Braaten's failure to report his DUI charges prevents him from establishing that he was performing his job satisfactorily.

The court disagrees. The Ninth Circuit has disapproved of district courts examining the terminating event in determining whether the plaintiff has made a *prima facie* showing of age discrimination. *See, e.g.*, *Decker v. Barrick Goldstrike Mines, Inc.*, 645 F. App'x 565, 567 (9th Cir. 2016) (holding that the "court misapplied the *McDonnell Douglas* framework by confusing the minimal showing a plaintiff must make at the prima facie stage with the more substantial showing required at the pretext stage" after the court found that the terminating event precluded finding that the plaintiff performed his job satisfactorily).

Because Newmont has not disputed that Braaten's work performance prior to his DUI-related conduct was at least satisfactory, the court finds that Braaten has established this *prima facie* element.

### 2. Braaten was not replaced by a substantially younger employee

"[A]n inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). In *France v. Johnson*, the Ninth Circuit held "that an average age difference of ten years or more between the plaintiff and the replacements will be presumptively substantial, whereas an age difference of less than ten years will be presumptively insubstantial." 795 F.3d 1170, 1174 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015). Several years before *France*, the court "applied this presumption [in *Diaz*] and concluded that a 9.5 years' average age difference between the workers hired and those laid off was insufficient to establish a prima facie case of age discrimination." *Id*. n. 2 (citing *Diaz*, 521 F.3d at 1207).

Newmont argues that, because the age difference between Braaten and his replacement was 9.5 years,[4] the above-cited precedent prevents this court from finding that Braaten has established this *prima facie* element. ECF No.43 at 25. Braaten counters that the Ninth Circuit held in *Douglas v. Anderson*—a case decided decades prior to *France* and *Diaz*—that a five-year age difference was substantially younger. ECF No. 45 at 4 (citing *Douglas v. Anderson*, 656 F.2d 528, 533 (9th Cir. 1981)). Braaten thus argues that, because these decisions are contradictory panel decisions, none are binding upon this court.

The court agrees with Newmont. While the panel in *Douglas* found that the plaintiff established a *prima facie* case, the case did not directly present the panel with the question of what minimum age difference results in a replacement employee being significantly younger. *See Douglas*, 656 F.2d at 533. Accordingly, the panel provided no analysis on this point. In contrast, the *France* panel directly addressed this issue, discussing the position the majority of circuit courts had taken and ultimately adopting the Seventh Circuit's ten-year-age-gap rebuttable presumption as the rule discussed above. *France*, 795 F.3d at 1174. The court therefore finds that this holding applies in the instant case.

However, as the *France* court also held, an age difference of less than ten years does not end the inquiry. *Id*. "A plaintiff who is not ten years or more older than his or her replacements can rebut the presumption by producing additional evidence to show that the employer considered his or her age to be significant. The plaintiff can produce either direct or circumstantial evidence to show that the employer considered age to be a significant factor." *Id* (citation omitted).

But as discussed in detail below, Braaten has provided no evidence of age discrimination. He has therefore failed to rebut the presumption that the age difference between himself and his replacement was insubstantial. Nonetheless, the final element of *prima facie* age discrimination is disjunctive, and a plaintiff may satisfy it by either showing that he was "replaced by substantially younger employees with equal or inferior qualifications *or* discharged under

---

[4] As discussed above, it is undisputed that Braaten was fifty-four years old at the time of his termination, while his replacement Todd Sullivan was forty-four-and-a-half years old.

7

circumstances otherwise giving rise to an inference of age discrimination." *Diaz*, 521 F.3d at 1207 (emphasis added) (internal quotations marks omitted). The court will therefore analyze whether any circumstances surrounding Braaten's termination create an inference of discrimination.

### 3. No circumstances give rise to an inference of age discrimination

"An inference of discrimination can be established . . . by showing that others not in [the plaintiff's] protected class were treated more favorably." *Id*. (internal quotation marks omitted). In his operative complaint, Braaten alleges that other employees "with DUI charges who did not timely report the charges to [Newmont] were not terminated . . . ." ECF No. 17 at 2. In his discovery responses, Braaten identified Shaun Forsberg and Lupe Macias as two employees who were charged with DUIs during their Newmont employment but were not terminated. ECF No. 43 at 26 (citing ECF No. 43-5). As mentioned above, Forsberg and Macias were two employees who Braaten supervised and who reported their DUI arrests to him.

Newmont argues that the fact that these two employees were not terminated cannot create an inference of age discrimination because both Forsberg and Macias reported their arrests, while Braaten was terminated for failing to report his charges. Braaten did not respond to this argument.

The court agrees with Newmont. Because Braaten has failed to identify even one employee that was not terminated for failing to report criminal charges pursuant to company policy, he has failed to satisfy his initial burden. And because he has also failed to alternatively demonstrate that Newmont hired a substantially younger replacement, Braaten cannot satisfy the fourth *prima facie* element. His claim therefore fails. The court will nonetheless address Newmont's reasons for terminating him.

### B. Newmont had legitimate, non-discriminatory reasons for termination

The court finds that the undisputed facts of this case establish that Newmont had a legitimate and non-discriminatory reason for terminating Braaten. First and foremost, he violated company policy by failing to report that he was charged with a DUI and willful injury to or destruction of property. Moreover, he made a short-term-disability claim and received

approximately $10,000 in benefits even though he was not eligible for such benefits due to the circumstances underlying his injury. The burden thus shifts to Braaten to establish that these reasons are pretextual.

### C. Newmont's reasons for terminating Braaten were not pretextual

"A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011). "Where evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Id*. In assessing an employer's proffered reasons for terminating an employee, "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).

Braaten has not proffered any direct evidence of age discrimination and must therefore rely on circumstantial evidence. He argues that he was a veteran employee with an accomplished record and that his non-disclosure, which he refers to as "non-malicious" and "unintentional," did not harm or prejudice Newmont. ECF No. 45 at 6. He contends that "Newmont knew almost immediately when the off-work accident occurred and [he] was hospitalized, that the accident may have involved alcohol and did nothing to forewarn [him] of this." *Id*.

These arguments are without merit. It is undisputed that Braaten violated company policy by failing to report his charges. Braaten's arguments merely attempt to call into question the wisdom and appropriateness of Newmont's termination decision without actually demonstrating that it was pretextual. Moreover, Newmont did not have a duty to forewarn Braaten that he would violate the policy by not reporting his charges; the evidence demonstrates that he was well aware of the policy and had numerous opportunities to report the charges.

Next, Braaten argues that he was released from the hospital on a limited basis in late April and was ready to return to work but that Burt "told him to stay home." *Id*. at 7. Braaten

9

1  argues that a reasonable juror could conclude that this was a "bait-and-switch" technique meant
2  to replace him with a younger employee. This speculation is without merit and contradicted by
3  the record, as Braaten's doctor submitted a note stating that Braaten was to "remain off work
4  until 9/1/14." ECF No. 48 at 12 (citing ECF No. 48-1 at 2). Moreover, Newmont encouraging its
5  employee to remain home and heal from an accident does not speak to Braaten's obligation to
6  disclose his charges to the company; Braaten could easily have called or emailed his supervisor
7  from his home.

8        Braaten also argues that "Newmont itself was confused on the 'reasons' for termination."
9  ECF No. 45 at 7. He highlights an email sent from Newmont HR Manager Debbie Paparich to
10  another company executive in which she asks the latter for a "summary on why we
11  recommended a term[ination] for" Braaten. *Id*. (quoting ECF No. 43-1 at 46). Paparich's email
12  continues to explain that "[t]he main concern expressed from Tom was that he was not clear on
13  the reason since it seems that Gary[,] Jack[,] and Ian had different versions." *Id*. Braaten argues
14  that these varying reasons are evidence of pretext. Newmont counters that Paparich, in her
15  deposition, explained that the company's code of conduct also requires employees to positively
16  represent the company and that the management team merely discussed whether Braaten's
17  violation of this policy was also a factor warranting termination. ECF No. 48 at 15 (citing ECF
18  No. 48-1 at 10).

19        The court does not find that Paparich's email is evidence of pretext. The response to her
20  email demonstrates that Newmont's managers, in their private discussions, asserted the same
21  rationale for terminating Braaten that they presented to him and to this court—i.e., failing to
22  report his charges and filing for short-term disability.[5] *See* ECF No. 43-1 at 45. The fact that
23  some managers also considered the issue of whether Braaten's failure to positively represent the
24  company was also a factor contributing to his termination does not demonstrate pretext. Most
25  importantly, nothing within these emails demonstrate that Newmont took Braaten's age into
26  consideration.

---

[5] Newmont managers also discussed other related issues, such as Braaten leaving work early the day of his accident while he was covering for Superintendent Burt. ECF No. 43-1 at 45.

10

Braaten also argues that Newmont "drove" him to file for short-term disability after he informed the HR specialist that he planned to use his PTO during his post-accident absence from work. This argument is also without merit, as it is an HR employee's role to inform other employees of company benefits and this interaction in no way demonstrates pretext.

The court has also considered the remainder of Braaten's arguments and finds that they are equally meritless as those discussed above and do not demonstrate pretext. Moreover, Braaten has failed to allege—let alone provide evidence of—a reason why Newmont would suddenly, after a twenty-four-year career, discriminate against him due to his age.[6] Accordingly, even if Braaten had satisfied his initial burden of demonstrating *prima facie* age discrimination, he has failed to overcome Newmont's legitimate, non-discriminatory reason for terminating him with "specific" and "substantial" facts that could create a triable issue of pretext. The court will therefore grant Newmont's motion for summary judgment.

**IV. Conclusion**

IT IS THEREFORE ORDERED that defendant Newmont USA Limited's Motion for Summary Judgment (ECF No. 43) is **GRANTED**.

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment against plaintiff John Braaten in favor of defendant Newmont USA Limited.

IT IS SO ORDERED.

DATED this 10th day of February, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[6] In his deposition, Braaten asserted that Newmont replaced him with a younger employee in order to avoid providing Braaten certain retirement benefits. ECF No. 43-2 at 16. He did not allege this issue in his operative complaint or address it in his response to Newmont's motion for summary judgement. Moreover, Braaten admitted in his deposition that his assertion was "speculation" and that he had no evidence that Newmont managers took his retirement benefits into consideration. ECF No. 43-2 at 17.

11